"The books of a bank, like those of a merchant or shopkeeper, must be proved by supplementary proof, oath of some officer or agent of the bank; and before the books of a bank can be received, it must be proved or admitted that the entries were made by an authorized clerk or agent."

No such proof was given or offered in this case, and, the proper foundation for the introduction of the books not having been laid, the transcript was not, by the stipulation, made evidence. I am also of the opinion that the question put by the plaintiff's counsel to the plaintiff, "Did you consent that Mr. Vrooman should draw this one thousand dollars from H. R. Pierson & Son's Bank?" was not proper, and that the admission of the answer, under defendant's objection, was error. Whether or not he consented, and what amounted to a consent, was the principal question to be litigated in this case. That question was to be determined by the referee from the facts, circumstances, and conversations relating to the entire transaction; and, while it was competent for the plaintiff, as a witness, to tell what was said, it was not, I think, competent for him to give a sweeping conclusion determining the whole theory of the defendant's defense. He should have been confined to giving the conversations, and the referee should make his deductions from the same. In Teerpenning v. Insurance Co., 43 N. Y. 281, Allen, J., says:

"As a rule, witness must state facts, and not draw conclusions or give opinions. It is the duty of the jury or the court to draw conclusions from the evidence, and form opinions from the facts proved."

I am therefore of the opinion that the judgment should be reversed, and the referee discharged, and a new trial granted, costs to abide event.

---

GIBBINS et ux. v. CAMPBELL et al.

(Supreme Court, General Term, Second Department. December 12, 1892.)

EQUITY—CANCELLATION OF BOND AND MORTGAGE—CONSIDERATION—ASSIGNEE—NOTICE—WILL OF EQUITABLE OWNER.

    A father purchased certain real estate, and caused the title to be taken in the name of his son, and the latter conveyed it to his wife. The father began an action to destroy the latter conveyance, which was settled by a conveyance by the wife to the son's sister, a conveyance by her to the son, and the execution back by him of a bond and mortgage to his sister. The mortgage was executed at the father's dictation to protect the property against any indebtedness that might be contracted by the son. The father, by his will, directed that the mortgage be canceled, so that the property might be held free therefrom by his son. After the father's death, the daughter assigned the mortgage to the person who drew her father's will, and the son conveyed the property to his wife. *Held,* in an action by the son and his wife against the daughter and her assignee, and the executor of the father's will, that a decree canceling the bond and mortgage was proper.

Appeal from special term, Kings county.

Action by Austin P. Gibbins and Veronica F. Gibbins, his wife, against James P. Campbell, James L. Lowry, as sole acting executor of Austin Gibbins, deceased, and Mary E. Gibbins, to cancel and restore a certain mortgage executed by Austin P. to Mary E. Gibbins, and by

the latter assigned to defendant Campbell.    From a judgment in favor of plaintiffs, defendants Campbell and Gibbins appeal.    Affirmed.

Argued before DYKMAN and PRATT, JJ.

William F. Clare, for appellants.

A. P. & W. Man, (William Man, of counsel,) for respondents.

DYKMAN, J.    It was the object of this action to obtain the cancellation and restoration of a bond and mortgage executed by the plaintiff Austin P. Gibbins to his sister, the defendant Mary E. Gibbins, for $15,000 upon premises in Brooklyn.    The case was tried at a special term, and the trial judge found the following facts, which are substantially the same as the facts which were set out in the complaint:    On or about September 16, 1889, the plaintiff Austin P. Gibbins signed a certain paper purporting to be a mortgage upon real property described in the complaint, and dated on the same day, to secure the payment of his bond for $15,000, also made to Mary E. Gibbins, his sister, which mortgage purported to be for part of the purchase money of the premises described therein, which were conveyed to him by his sister by deed of equal date with the said mortgage, he and his wife having executed and delivered a deed of the same premises to his sister on the same day.    That the mortgage to Mary E. Gibbins was absolutely and entirely without consideration passing to the plaintiffs, or either of them, from the mortgagee, but that the mortgage was made at the request of Austin Gibbins, the father of the plaintiff, Austin P. Gibbins, for purposes of his own, and put in the name of Mary E. Gibbins as mortgagee solely for his convenience, and that the same belonged to him, the father, so far as there was any consideration therefor.    That from September 16, 1889, the premises were the absolute property of the plaintiff Austin P. Gibbins, until recently conveyed by him to his wife, the other plaintiff.    That Austin Gibbins, the father of the plaintiff Austin P. Gibbins, died in the month of January, 1890, leaving his last will and testament, dated January 5, 1890, which was duly proven as a will of real and personal property, and letters testamentary thereunder were issued to the defendant James L. Lowry, and he is still the sole acting executor of said will, and he has, as executor or otherwise, no right, title, or interest whatever in said bond and mortgage.    That in and by the said will of Austin Gibbins he asserted, and it was the fact, that the said Mary E. Gibbins held the said mortgage for $15,000 at the control of said testator, and under his direction; and he provided by his will that the said mortgage should be canceled and discharged, so that the real estate might be held by the plaintiff Austin P. Gibbins free of the mortgage; and at the time of the making and probate of said will, the plaintiff Austin P. Gibbins was the owner of said property, and held the title thereto, but has since for valuable consideration conveyed the same to the plaintiff Veronica F. Gibbins, who is now the owner thereof.    On or about September 17, 1891, the defendant James P. Campbell procured the defendant Mary E. Gibbins to execute a paper purporting to be an assignment to him of the said bond and mort-

gage, which assignment was recorded September 25, 1891, in the office of the register of Kings county, and the said mortgage was recorded October 11, 1889, in the same register's office. That James P. Camp-bell took the said mortgage subject to any defense for lack of considera-tion or otherwise to which it was subject in the hands of his assignor, and the said mortgage is of no greater value in his hands than it was in the hands of Mary E. Gibbins. That the plaintiffs have duly de-manded before the commencement of this action that the said mortgage should be canceled as without consideration passing to Mary E. Gib-bins, and for the reason that it was directed by the will of Austin Gibbins to be canceled. Before the commencement of this action the defendant Campbell threatened to foreclose the said mortgage against the property of the plaintiff Veronica F. Gibbins, and to hold liable upon the bond therein recited the plaintiff Austin P. Gibbins.

As conclusion of law, the trial judge found that neither of the de-fendants James P. Campbell, James L. Lowry, as executor of Austin Gibbins, deceased, nor Mary E. Gibbins, has any interest whatever in the ownership of or control over the said bond and mortgage for the purpose of canceling the same. That the said bond and mortgage were not of any value, so far as Mary E. Gibbins was concerned, in her hands, and that there was never anything due to her thereupon, and she never had any interest, legal or equitable, in said bond or mortgage, and could transfer none to the said James P. Campbell, and he never acquired, by the assignment to him, any greater interest than his as-signor, Mary E. Gibbins, had, which was none. That the defendant Mary E. Gibbins held the said bond and mortgage solely under the direction and control of her father, Austin Gibbins, and that under his will the plaintiff Austin P. Gibbins was and is entitled to have the said bond and mortgage canceled and delivered up. That the said bond and mortgage do not form an asset of the estate of Austin Gibbins in the hands of James P. Campbell as executor of said will, and he has no right, title, or interest in or to the same, either in his own name as such executor, representing the estate, or in the name of James P. Campbell, as attorney or agent. The said mortgage to be canceled and discharged of record, and the bond recited in and accompanying said mortgage, should be canceled and delivered to the plaintiff Austin P. Gibbins. That the defendants, and each of them, should be enjoined and forever restrained from in any manner proceeding to enforce, sue upon, or collect the said bond and mortgage, and from making any claim thereon or thereby. And I direct judgment according to the fore-going findings and conclusions in favor of the plaintiffs, with their costs to be taxed, and $250 additional allowance. From the judgment en-tered in pursuance of these findings the defendants James P. Campbell and Mary E. Gibbins have appealed to the general term, and the case s brought before us in that way.

It appears from the record that Mary E. Gibbins answered the com-plaint upon the merits, and denied that she held the mortgage for her father, or at his direction, and alleged that the mortgage was given for

full value. The defendant Lowry did not answer, but appeared as a witness for Mr. Campbell upon the trial. The defendant Campbell answered the complaint, also insisting that he was the absolute owner and holder of the mortgage for full value. The findings of the trial judge are fully sustained by the testimony produced on the trial, and the question presented here seems to be whether anything was due to the defendant Campbell upon this mortgage; whether it was, in his hands, a valid subsisting security against the property of the plaintiffs. The trial judge has found that the bond and mortgage never had any vitality, and from the testimony it is to be gathered that they were made to subserve a purpose which was well understood, and was stated by Mr. Benedict, the lawyer, who was a witness, as follows:

"The basis of the fifteen thousand dollars, as Mr. Gibbins, Sr., stated to me in the presence of his son, was that he wanted this property protected. He wanted me to draw a fifteen thousand dollar mortgage on it to the daughter. I recorded the mortgage. No money consideration passed for the mortgage, to my knowledge, or any money consideration for the deed from Gibbins, Jr., to his sister. Mr. Gibbins said something about protecting the property. He said that his son might get into debt, and for that reason he wanted this fifteen thousand dollar mortgage executed."

As the defendant Campbell took the bond and mortgage subject to all existing equities, they fall in his hands as they would have done in the hands of his assignor. She never had any interest in the transaction, and was a mere intermediary, utilized by her father as an instrument to accomplish his purpose to protect the property in the hands of his son. According to the testimony of the plaintiff Austin P. Gibbins, which was uncontradicted, the property in question was purchased by his father, Austin Gibbins, who paid for the same, and caused the title to be taken in the name of his son, the plaintiff, where it remained until 1889, when he conveyed it to his wife, to whom he was married in the mean time. Then the father commenced an action to destroy that conveyance, which was settled by a reconveyance of the property by the wife to the defendant Mary E. Gibbins, a conveyance by her to the plaintiff Austin P. Gibbins, and the execution of the $15,000 mortgage in question back, all of which was dictated by the father, Austin Gibbins. The father was therefore the equitable owner of the securities at the time of his death, and by his will he directed that the mortgage be canceled and discharged, so that the property might be held free of said mortgage. Notwithstanding this direction, the defendant James P. Campbell, who drew the will, and was named as an executor therein, now claims to hold this mortgage individually, and enforce its collection against the property. If such enforcement is permitted, the purpose of the father, who had the right to dictate the cancellation of the papers, will be defeated, and a great wrong permitted. The effort to enforce the collection of the bond and mortgage is to endeavor to perpetrate a fraud against the plaintiffs, and the defeat of such object is a well-recognized head of equitable jurisprudence. It requires but little research to find an equitable principle which will defeat the effort to enforce the mortgage, for equity, in its broadest sense, is based upon natural justice, honesty, and right, and courts of equity are ever ready to assist in their

advancement, and prevent their violation. As, therefore, it would be clearly inequitable to permit the collection of this bond and mortgage, the power of the court is wisely executed to prevent the wrong, and the judgment should be affirmed, with costs.